THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BOBBY B. ODUMUYIWA, Defendant-Appellant.

Second District   No. 2—87—0506

Opinion filed August 31, 1989.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Following a bench trial, defendant, Bobby B. Odumuyiwa, was convicted of unlawful use of a driver's license (Ill. Rev. Stat. 1985, ch. 95½, par. 6—301) and driving while his driver's license was suspended (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303). On April 16, 1987, the trial court sentenced defendant to two concurrent terms of 28 days in the county jail. Defendant raises three questions for appellate review: (1) whether the prosecution failed to prove the defendant guilty beyond a reasonable doubt of the offense of driving while his driver's license was suspended where the stipulated, uncontested evidence adduced below was that defendant's driver's license had been cancelled prior to being suspended by the Secretary of State; (2) whether the trial court erred in finding defendant guilty of two offenses (unlawful use of license and driving while driver's license was suspended) where both offenses were carved from the same physical act; and (3) whether the mittimus for the unlawful use of license conviction should be corrected to reflect that the offense is a Class C misdemeanor.

We affirm both convictions and sentences; however, we remand the cause with instructions that the sentencing order and mittimus in case No. 86—TR—121929 be corrected to reflect that the unlawful use of a driver's license is a Class C misdemeanor.

The facts of this case must be gleaned principally from the bystander's report certified by the trial court. The report states the following:

"On March 12, 1987, a hearing was held on Defendant-Appellant's Motion to Dismiss the instant charges of Driving While License Suspended and Unlawful Use of License on October 16, 1986. Defendant was represented by counsel. The Motion to Dismiss was predicated on the uncontested fact that the certified record of the Secretary of State showed: (1) that in early April, 1986, that office had cancelled Defendant's driving license; and (2) that approximately two weeks later Defendant's driving license was suspended. In light of that fact, counsel maintained: (a) that the purported suspension must be regarded as a null act, the license having already been cancelled; and (b) that, accordingly, the report of the Secretary of State that Defendant's driving license remained suspended as of the subsequent arrest date must, as a matter of law, be held to be erroneous. There being no evidence of a change in status between April and October (e.g., a reinstatement and a resuspension), counsel asked that the charges be dismissed. Neither counsel

for Defendant nor the Assistant State's Attorney cited authority in case law in support or in opposition.

The court denied the motion to dismiss and entered a finding of guilty on each charge. It is to be noted that it is uncertain whether the findings of guilty were entered on pleas of guilty or rather pursuant to stipulated evidence and the contested motion. The relevant notations on the reverse of both court files and on both sentencing orders show, *inter alia*, pleas of guilty. Yet it may be that the pleas of guilty were treated as if withdrawn. In either event, the findings of guilty were entered only subsequent to the agreed admission into evidence, at hearing, of the Secretary of State's abstract of record concerning Defendant. Nothing was contested other than the legal effect of a cancellation effective prior to a purported suspension."

Defendant first argues that he could not be found guilty beyond a reasonable doubt of driving while his license was suspended because the Secretary of State (Secretary) cannot suspend a previously cancelled driver's license. Defendant reasons that suspending a previously cancelled license is a nullity, since the prior license is no longer in force. Defendant also points out that a suspension is qualitatively different from a cancellation. Based on particular facts of this case, defendant raises an issue which appears to be a matter of first impression in this court.

The State responds that the Secretary may suspend a driver's current driving privilege even after a driver's license has been previously cancelled, noting that there is no case law or statutory authority preventing him from doing so. We agree with defendant that a suspension is qualitatively different from a cancellation; however, we see no reason why the Secretary, in addition to cancelling a license, may not also suspend a person's driving privilege thereby preventing a driver from applying for or reinstating a license during a specific period of time. An examination of the two distinct courses of action available to the Secretary reveals that each has its own purpose and effect.

■ Pursuant to section 6—201 *et seq.* of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—201 *et seq.*), the Secretary is authorized to cancel or suspend a person's driving privilege or driver's license. The cancellation of a driver's license is defined as:

"The annulment or termination by formal action of the Secretary of a person's driver's license because of some error or defect in the license or because the licensee is no longer entitled

to such license, but the cancellation of a license is without prejudice and application for a new license may be made at any time after such cancellation." (Ill. Rev. Stat. 1987, ch. 95½, par. 1—110.)

"Cancel" also means "to nullify, declare null and void; to set at naught the provisions of the instrument canceled and to declare them null and void." *Friedman v. City of Chicago* (1940), 374 Ill. 545, 550, 30 N.E.2d 36.

■ Generally, the basis of a cancellation is a defect or error in the licensing procedure itself, such as the failure of the applicant to provide the correct information, the failure to pay required fees or taxes, or the ineligibility of the applicant for a license. (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—102.) It is important to note that the cancellation of a license is without prejudice, and application for a new license may be made at any time after such cancellation. (Ill. Rev. Stat. 1987, ch. 95½, par. 1—110.) Thus, by correcting the error or defect by means of an essentially ministerial act, the defendant would have the right to regain his license at any time after the cancellation.

■ By contrast, a "suspension" is defined as:

"The temporary withdrawal by formal action of the Secretary of a person's license or privilege to operate a motor vehicle on the public highways, for a period specifically designated by the Secretary." Ill. Rev. Stat. 1987, ch. 95½, par. 1—204.

■ When a driver's license or privilege is suspended, the driver cannot automatically reinstate the license or privilege to drive by the performance of a ministerial act until a specified period of time has elapsed. (See *People v. Suddoth* (1964), 52 Ill. App. 2d 355, 359, 202 N.E.2d 120.) A suspension generally applies to situations where the driver has committed a relatively serious offense warranting the suspension of his privilege to drive. (See, *e.g.*, Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.) The suspension may last up to one year or more in duration. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—208.) It is evident that a suspension is a regulatory sanction having more serious consequences than does a cancellation. We observe that the term "license to drive" encompasses two distinct meanings: (1) the physical document itself, and (2) the abstract or intangible privilege of driving. A "license to drive" is defined as:

"Any driver's license or any other license or permit to operate a motor vehicle issued under the laws of this State including:

1. Any temporary license or instruction permit;

2. The privilege of any person to drive a motor vehicle

whether or not such person holds a valid license or permit.

3. Any nonresident's driving privilege as defined herein." Ill. Rev. Stat. 1987, ch. 95½, par. 1—138.

■■ There is nothing in the record showing why the defendant's driver's *license* was cancelled or declared void, or why his *privilege* to drive was later suspended thereby barring him from applying for or reinstating his driver's license for a period of time specified by the Secretary. It is quite possible that each course of action by the Secretary stemmed from entirely independent causes not apparent in the record. Based on the facts of this case, we see no reason why these two actions by the Secretary should be considered mutually exclusive or logically inconsistent. Because of the qualitative differences between cancellation and suspension, we do not find persuasive defendant's argument that the suspension was a nullity. Defendant argues only that there was no suspension in effect at the time of the incident in question. In view of our discussion, we find that there was a valid suspension in effect at the time of the offense based on the facts of this case.

■■ ■ A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt; here, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Bartlett* (1988), 175 Ill. App. 3d 686, 691, 530 N.E.2d 90.) Despite the limited record before us, we cannot say that the evidence of the suspension is insufficient to sustain the conviction or that the evidence is so unsatisfactory that it creates a reasonable doubt of defendant's guilt.

■■ ■ Defendant next argues that the trial court erred in finding defendant guilty of two offenses, the unlawful use of license and driving while his license was suspended, because both offenses were carved from the same act. Defendant concedes that the record provides no illuminating facts regarding the incident save that the complaints allege that both offenses occurred on the same date, time and location. There is no witness testimony concerning the actions of defendant which may have provided a separate basis for each offense charged. The bystander's report states that nothing was contested other than the legal effect of the cancellation prior to the suspension of defendant's license to drive. The appellant has the burden of providing a sufficiently complete record on appeal so that the reviewing court is fully informed regarding the issues to be resolved; in the absence of a complete record on appeal, it is presumed that the trial

court's judgment conforms to the law and has a sufficient factual basis. (*Davis v. Allstate Insurance Co.* (1986), 147 Ill. App. 3d 581, 585, 498 N.E.2d 246; *People v. Majer* (1985), 131 Ill. App. 3d 80, 83, 475 N.E.2d 269.) Any doubt arising from the incompleteness of the record will be resolved against the appellant. *Majer*, 131 Ill. App. 3d at 84, 475 N.E.2d 269.

Defendant has failed to affirmatively demonstrate the existence of error in the sparse record provided; therefore, we affirm the convictions of the two offenses.

■■ Finally, the State agrees with the defendant that the sentencing order and mittimus in case No. 86—TR—121929 should be corrected to reflect that the unlawful use of a license is a Class C misdemeanor rather than Class A misdemeanor. (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—301.) We concur, and we instruct the trial court to make the necessary corrections.

For the foregoing reasons, we affirm both convictions and sentences and remand the cause with instructions to correct the sentencing order and mittimus in case No. 86—TR—121929.

Affirmed and remanded with instructions.

McLAREN and REINHARD, JJ., concur.