NO. 4-97-0190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

WILLIAM VALA,                           )   Appeal from

Plaintiff-Appellant,          )   Circuit Court of

v.                            )   Logan County

PACIFIC INSURANCE COMPANY, LTD.,        )   No. 96L8

 Defendant-Appellee.           )

                                        )   Honorable

                                        )   Gerald G. Dehner,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, William Vala, brought suit against defen­dant, Pacific Insurance Company, for an alleged breach of an insurance contract.  He asked for specific enforcement of the con­tract and for damages as a result of defendant's alleged un­rea­sonable deni­al of plaintiff's claim under the policy issued by defendant.  Defen­dant filed a motion to dismiss the complaint under sections 2-615 and 2-619 of the Civil Practice Law.  735 ILCS 5/2-615, 2-619 (West 1996).  Plaintiff appeals from the dismissal of his com­plaint pursuant to defendant's motion under section 2-619.  Plaintiff argues it was error for the trial court to find his action time-barred.  We dis­agree and find his com­plaint was time-barred and proper­ly dis­missed.

Plaintiff purchased a policy of insur­ance from defen­dant cov­ering an office building he owned in Lincoln for the period from April 15, 1994, through October 15, 1994.  He con­tends on June 8, 1994, a severe windstorm and rainstorm caused dam­age to his property in ex­cess of the $40,000 policy amount and the cause of the loss was a peril covered by the policy.  

The policy required in case of loss:

"The insured shall give immediate written

notice to [defendant] of any loss, protect

the property from further damage, forthwith

separate the damaged and undamaged personal

property, put it in the best possible order,

furnish a complete inventory of the destroyed,

damaged and undamaged property, showing in

detail quantities, costs, actual cash value

and amount of loss claimed; and within sixty

days after the loss, unless such time is ex-

tended in writing by [defendant], the in­sured

shall render to [defendant] a proof of loss,

signed to and sworn to by the insured, stating

the knowledge and belief of the insured as 

to the following: ***."

Shortly after the damage occurred, plaintiff made a claim against the policy and provided defendant with some in­for­ma­tion concern­ing his loss.                 

Defendant then had several examinations of the property made by different adjusting firms.  On September 26, 1994, plain­tiff's claim was denied by defendant.  Plain­tiff's local in­sur­ance agent, Mike Parr, also re­ceived a copy of the deni­al letter and contact­ed individu­als representing de­fen­dant ob­jecting to the denial and requesting further investi­ga­tion be done.  Parr was advised to contact Greg­ory Purtell, claims exam­iner for First State Management Group, Inc., managing general agent for defen­dant.  Parr telephoned Purtell, who informed him defendant might reconsider the denial of plaintiff's claim. 

On October 14, 1994, Parr sent paperwork to Purtell restating the facts of the claim.  That same day, at Purtell's instruction, Parr put the request for reconsideration in the form of a letter.  Purtell received Parr's letter on October 19 and, upon instruction from defendant, engaged gen­er­al ad­just­er R.A. Scheppers to reinvestigate the claim.  Scheppers reinspected the property in the presence of Parr and plaintiff on October 26.  By let­ter of November 14, 1994, Scheppers informed plaintiff his claim was still denied by defendant.  Plaintiff filed his com­plaint against defendant on November 6, 1995.  Pursuant to defendant's motion, plaintiff's complaint was dismissed on Febru­ary 24, 1997.  Plain­tiff filed a timely notice of appeal.

The insurance policy at issue provided any suit or action brought on the policy for the recovery of any claim must be "commenced within twelve months next after inception of the loss."  The Illinois Insurance Code (Code) provides such peri­ods of limi­ta­tions may be tolled only under certain circum­stanc­es:

"Whenever any policy or contract for insur-

ance *** contains a provision limiting 

the period within which the insured may bring 

suit, the running of such period is tolled

from the date proof of loss is filed, in 

whatever form is required by the policy, un-

til the date the claim is denied in whole or

in part."  215 ILCS 5/143.1 (West 1996).

Plaintiff contends the trial court erred in granting defendant's section 2-619 motion to dismiss based on the period of limitations.   A trial court's ruling on a motion to dis­miss is reviewed 
de
 
novo
.  
Apple II Condominium Ass'n v. Worth Bank & Trust Co.
, 277 Ill. App. 3d 345, 348, 659 N.E.2d 93,  96 (1995).  Because the appellate court is conducting an inde­pen­dent review of the propriety of a trial court's dis­missal of a com­plaint for failure to commence within the time required, it is not required to defer to the trial court's rea­soning.  
Wells v. Travis
, 284 Ill. App. 3d 282, 285, 672 N.E.2d 789, 792 (1996).  In conducting 
de
 
novo
 review, the appellate court will examine the complaint and all evidentiary material before the trial court at the time of entry of the order, construing the evi­dence and draw­ing all reasonable inferences in the light most favorable to the plain­tiff.  See 
Weidman v. Wilkie
, 277 Ill. App. 3d 448, 456, 660 N.E.2d 157, 162 (1995).    

Plaintiff argues that by pro­vid­ing de­fen­dant with in­for­ma­tion per­ti­nent to his loss, he trig­gered the tolling of the limi­ta­tions period provided in section 143.1 of the Code and his com­plaint was timely filed.  The policy issued by defendant pro­vides in the event of a loss "within sixty days after the loss, unless such time is extended in writing by [defendant], the in­sured shall render to [defendant] a proof of loss, 
signed and sworn to by the insured
, stating the knowledge and belief of the in­sured as to the following:" and then lists the in­for­ma­tion re­quired to be submitted.  (Emphasis added.)  In his amended re­sponse to the mo­tion to dismiss, plaintiff included his sworn affidavit stating he pro­vided de­fendant with certain information that ap­pears to track what the insurance policy requires be in­cluded in an insured's signed and sworn proof of loss.  However, this state­ment does not indi­cate how this information was trans­mitted to defendant and noth­ing in the re­cord indi­cates plain­tiff actu­al­ly pro­vided de­fen­dant with a signed and sworn state­ment con­tain­ing this in­for­ma­tion.  

Section 143.1 requires a proof of loss must be filed in the form 
required
 by the policy in question before the limita­tions period provided in the policy will be tolled.  215 ILCS 5/143.1 (West 1996); 
Davis v. Allstate Insurance Co.
, 147 Ill. App. 3d 581, 584, 498 N.E.2d 246, 248 (1986).  Filing of other in­for­ma­tion with an insurance company does not start tolling the run­ning of a policy's one-year limitations period if sworn proof of loss is required by the policy.  
Vole v. Atlanta International Insurance Co.
, 172 Ill. App. 3d 480, 483, 526 N.E.2d 653, 655 (1988).  

We are not con­vinced plain­tiff sat­is­fied the poli­cy requirements for proof of loss.  Either he did not fulfill the requirements or, viewing the lack of evi­dence in the record of compliance with the policy provi­sions in the light most fa­vor­able to plain­tiff, he filed an in­complete record on appeal.  Howev­er, because any doubts caused by an insufficient record will be re­solved against the appellant (
People v. Sechler
, 262 Ill. App. 3d 226, 227, 634 N.E.2d 1283, 1284 (1994)), we cannot infer plain­tiff ful­filled the policy requirements of proof of loss necessary to toll the policy's limitations period.               

Even if plaintiff had complied with the re­quire­ments of his insurance policy in filing a written and sworn proof of loss and the one-year period of limitations for filing suit against defendant was tolled, plaintiff's suit still was filed be­yond the limitations period provided.  Plaintiff had one year from the date of loss, June 8, 1994, to file suit against defen­dant.  Sec­tion 143.1 of the Code states the toll­ing of the limi­ta­tions period runs from the date a proof of loss is filed until a claim is de­nied.  215 ILCS 5/143.1 (West 1996).  In this case plaintiff's claim was de­nied by defendant on Septem­ber 26, 1994.   The date on which any tolling of the limitations could have begun is not certain as no date is given in the re­cord for 
when
 plain­tiff sup­plied defendant with infor­ma­tion that could argu­ably be construed as a proof of loss.  Plain­tiff sim­ply states in his affi­da­vit it was "with­in two to three days of the loss."  Thus, no accurate computation can be made.  However, the loss oc­curred on June 8, 1994, and assuming plaintiff provid­ed infor­ma­tion to defendant on June 11, the time from then until Septem­ber 26 could be consid­ered tolled.  That amounts to 100 days.  There­fore, plaintiff had 107 days after June 8, 1995, to file his suit.  That would require his suit be filed by September 16, 1995.  He did not file suit until No­vem­ber 6, 1995, and the suit is time-barred. 

Plaintiff con­tends defendant's agreement to rein­ves­ti­gate the loss after its denial of September 26, 1994, should be con­sid­ered to further toll the limi­tations period until what he terms the final denial of his claim on November 14, 1994.  Plain­tiff contends defendant's denial of September 26 was only a "pre­liminary" denial and denial was not final until November 14.  While de­fen­dant did agree to look into the claim again, the evi­dence indi­cates it did so as a cour­tesy to plain­tiff and never withdrew its original denial.  The period of time between plain­tiff's receipt of defendant's denial and the reaf­firmation of its deni­al does not constitute time that can be tolled.  The toll­ing ceas­ed upon the date of the original (and never rescind­ed) denial pur­su­ant to sec­tion 143.1.  

Plaintiff fears if an insurance com­pany is allowed to reinvestigate a claim as a courtesy without it tolling the limi­tations period on filing suit the company could lull an in­sured into com­pla­cen­cy by agree­ing to rein­ves­ti­gate a claim after deni­al and then not reaffirming its denial until after the one-year peri­od for fil­ing suit has ex­pired.  Such fears are not well-founded.  Nei­ther plain­tiff nor any other in­sured should rely­ on an insurance company's agreement to rein­vesti­gate a claim as if it were an agreement to vacate the denial and start from scratch.  In order to preserve the rights granted under the poli­cy, the in­sured should file suit against the insur­ance compa­ny within one year of the original denial even if prior to receipt of the company's re­port of the re­sults of its rein­ves­tiga­tion.  

Further, in this case, defendant took only about a month after it agreed to reinvestigate the claim until it reaf­firmed its denial to plaintiff.  Thus, plaintiff had from Novem­ber 14, 1994, until June 8, 1995, if the limitations period was not tolled at all, or until September 16, 1995, if the limita­tions period were tolled as plaintiff contends it should have been, to file suit.  The 
ad
 
terrorem
 argument of plaintiff is refuted by the speed with which defendant reaffirmed its denial and the length of time plaintiff still had to timely file suit.

We find plaintiff's com­plaint against de­fen­dant was time-barred and the motion to dis­miss was properly granted.

Affirmed.            

GARMAN, P.J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

Under the rule announced today an insurer can process a claim without ever requesting a proof of loss from the insured, but still complain about the failure to submit a proof of loss once suit is filed.  The majority holds the one-year period of limita­tions is not tolled during time charged to the insur­er, the time while the insurer inves­ti­gat­es the claim and considers what course of action it should take.  I re­spect­ful­ly dis­sent.  I would reverse the deci­sion of the trial court dis­missing this com­plaint and remand for further proceed­ings.  

This case involves a policy period of limitation, a limita­tion pre­pared by the insur­er.  Such policy provisions, which fix periods of limitation differ­ent from those prescribed in the general stat­utes of limitations, are controver­sial and have been regulated by statute in many states.  44 Am. Jur. 2d 
Insurance
 §§1879, 1881 (1982).  Courts in other juris­dictions have held that a policy period of limitations does not begin to run until the loss is payable and an action might be brought against the insurer, that is, until the insurer has had a reason­able time to investi­gate the claim and make payment or deny the claim.  44 Am. Jur. 2d 
Insurance
 §1884 (1982).  

Section 143.1 is de­signed to protect insureds against unreason­able periods of limita­tion imposed by insurers.  215 ILCS 5/143.1 (West 1996).  The policy limita­tion in this case is abso­lute in its terms, requir­ing that suit be brought "within twelve months next after incep­tion of the loss," without any mention of toll­ing.  Section 143.1 voids that abso­lute limita­tion and re­quires that the limitation be "tolled from the date proof of loss is filed, 
in
 
whatever
 
form
 
is
 
re­quired
 
by
 
the
 
policy
, until the date the claim is denied in whole or in part."  (Emphasis added.)  215 ILCS 5/143.1 (West 1996).  The policy's requirement for proof of loss here is:

"[W]ithin sixty days after the loss, unless 

such time is extended in writing by this 

Compa­ny, the insured shall render to this 

Company a proof of loss, signed and sworn to 

by the insured, stating the knowl­edge and 

belief of the insured as to the follow­-

ing ***."

Insurers often investigate and settle insurance claims without requiring a proof of loss.  It is clear that an insurer can waive the requirement that a proof of loss be filed.  
Tarzian v. West Bend Mutual Fire Insurance Co.
, 74 Ill. App. 2d 314, 326-27, 221 N.E.2d 293, 299 (1966) (policy requirement that proof of loss be furnished within 60 days).  The waiver need not be accom­plished by the use of express words.  It may be done by conduct inconsis­tent with an intention to enforce strict compli­ance with the conditions of the policy, which conduct leads the insured to believe that the company did not intend to require compliance.  
Tarzian
, 74 Ill. App. 2d at 326-27, 221 N.E.2d at 299; 44 Am. Jur. 2d 
Insur­ance
 §1379 (1982).  If the policy requires proofs of loss to be made on blank forms to be furnished by the insurer, the failure or refusal to furnish such blank forms constitutes a waiver of the policy requirements.  44 Am. Jur. 2d 
Insurance
 §1382 (1982).  The common practice in the insurance industry is for the insurer to furnish a proof-of-loss form for the insured's signature after the insurer has inves­ti­gat­ed the claim and is ready for settle­ment.  See 
Koclanakis v. Merrimack Mutual Fire Insurance Co.
, 709 F. Supp. 801, 806, (N.D. Ill. 1988), 
aff'd
, 899 F.2d 673 (7th Cir. 1990) (adjuster included a proof-of-loss form for insured to complete when he tendered the settlement offer).  Many insureds do not know what a proof of loss is until their insurer hands it to them.  To allow the insurer to escape the tolling provi­sions of section 143.1 by not requiring a proof of loss, or by delaying its request for one, would be intol­er­a­ble.  

Many policies explicitly state that no proof of loss need be filed until one is requested by the insurer.  See, 
e.g.
, 
Harvey Fruit Market, Inc. v. Hartford Insurance Co. of Illinois
, 294 Ill. App. 3d 668, 669, 691 N.E.2d 71, 72 (1998); 
Trinity Bible Baptist Church v. Federal Kemper Insurance Co.
, 219 Ill. App. 3d 156, 158, 578 N.E.2d 1375, 1376 (1991).  Those poli­cies do not set out some excep­tion­al rule; they simply recite the common prac­tice in the han­dling of insur­ance claims.  There is no duty to file a proof of loss until the insurer requests it and pro­vides a form if a particular form is required.    

The underlying policy of section 143.1 is that time taken by the insurer to investigate and decide the claim should not be allowed to consume any part of the one-year period of limita­tions.  If there is no tolling unless the insurer requests a proof of loss, the insurer could wait until after the year had expired before denying the claim.  That approach was rejected in 
Trinity
, 219 Ill. App. 3d at 160, 578 N.E.2d at 1377, where the court reversed a decision of the trial court that no proof of loss was requested, therefore no tolling occurred.  
Trinity
 quot­ed legis­lative debates indi­cat­ing that the purpose of section 143.1 was to prevent insurance companies from sitting on the claim while the period of limita­tions ex­pired.  
Trinity
, 219 Ill. App. 3d at 160-61, 578 N.E.2d at 1377-78.  The 
Trinity
 court remanded for the trial court to determine whether the information fur­nished by the insured was adequate to comply with the proof-of-loss provi­sion.  I agree with 
Trinity
, but I would state the rule more positive­ly:  when an insurer does not require the fil­ing of a proof of loss, after a claim has been made, it accepts the infor­mation it has been given by the insured as suffi­cient for it to decide the claim and to begin tolling under section 143.1.

No case before this one has squarely held that the time before a proof of loss is re­quested should be charged to the insured.  See 
Davis v. Allstate Insurance Co.
, 147 Ill. App. 3d 581, 498 N.E.2d 246 (1986) (suit filed more than a year after proof of loss 
request
­
ed
, even with credit for period between proof of loss and denial of claim); 
Koclanakis
, 709 F. Supp. 801
 (suit filed more than a year after 
request
 for proof of loss); 
Vole v. Atlanta International Insurance Co.
, 172 Ill. App. 3d 480, 526 N.E.2d 653 (1988) (unclear whether proof of loss re­quested).  

It is clear that the insurer in this case waived the filing of proof of loss.  The insurer denied the claim.  An insurer's denial of liability on grounds other than the insured's failure to file proof of loss "'waives or renders unnecessary compliance with the policy requirement respecting the filing of proof of loss.'"   
Tarzian
, 74 Ill. App. 2d at 326-27, 221 N.E.2d at 299, quoting 
Stolz v. National Indemnity Co.
, 345 Ill. App. 495, 502, 104 N.E.2d 320, 323-24 (1952).  If the insur­er has enough informa­tion to knowledgeably deny a claim it does not need a proof of loss.  

Under the policy's clause requir­ing the filing of a proof of loss here within 60 days, the insured's right to sue expired August 8, 1994, while the claim was still being consid­ered by the insur­er.  Of course, that result cannot be tolerat­ed.  The insurer here did not require that a proof of loss be filed within 60 days, or within any time.  Some cases appar­ently take the posi­tion that an insurer can waive the filing of a proof of loss for purposes of the 60-day clause, but not waive the proof of loss for purpos­es of the one-year limita­tions period.  See 
Vole
, 172 Ill. App. 3d at 483, 526 N.E.2d at 655; see also 
Koclanakis
, 709 F. Supp. at 807-08.  
I disagree.  A waiver is a waiver.  It is impos­si­ble for an insur­ance company to fail to request a proof of loss and at the same time request a proof of loss.  If the insurer has not requested a proof of loss, the insured has no duty to file one.  If the insurer waives the fil­ing of a proof of loss, then the insured must be considered to have filed a proof of loss "in whatev­er form is required by the policy."  215 ILCS 5/143.1 (West 1996).     

Sometimes insurers do require proofs of loss.  For example, in cases where it appears that fraud may be in­volved, it is impor­tant to the insurer that the insured sign a sworn proof of loss under oath.  The cases cited by the majority are all fraud cases, unlike this case.  See, 
e.g.
, 
Harvey Fruit Market, Inc.
, 294 Ill. App. 3d 668, 691 N.E.2d 71 (arson, misrep­resen­ta­tion, and fraud); 
Vole
, 172 Ill. App. 3d 480, 526 N.E.2d 653 (stolen horse case; insured did not cooperate in investiga­tion); 
Koclanakis
, 709 F. Supp. 801 (bur­glary loss; insured failed to appear for sworn examination)
.  Another fraud case is 
Davis
, 147 Ill. App. 3d at 582, 498 N.E.2d at 247 (arson, fraud, and false swear­ing), where the loss oc­curred March 26, 1983, and the insur­er on April 11, 1983, re­quested a sworn proof of loss from the insured ("di­rected her to comply with the terms and condi­tions of the policy if she wished to proceed with her claim"). 

The purpose of a proof of loss is to allow the insurer to form an intelligent estimate of its rights and liabil­ities, to afford it an opportunity for investi­gation and to prevent fraud and imposition upon it.  44 Am. Jur. 2d 
Insurance
 §1323 (1982).  The purpose of a proof of loss is not to give the insurer an addi­tional techni­cal argument to be used after suit is filed.  "'A breach which will defeat recovery cannot be based upon tech­ni­cal or unimpor­tant omissions or defects in performance.'"  
Koclanakis
, 709 F. Supp. at 806,
 quoting 
Piro v. Pekin Insur­ance Co.
, 162 Ill. App. 3d 225, 229, 514 N.E.2d 1231, 1234 (1987).  
Koclanakis
 did hold there was no tolling under section 143.1 in the case before it, but in that case the insured not only did not file a proof of loss after being re­quested to do so, he did not other­wise furnish important addi­tional evi­dence regard­ing disput­ed items as re­quest­ed by the insurer.  
Koclanakis
, 709 F. Supp. at 807-08
.   

The insured here filed a sworn affidavit in the trial court setting out the information that he furnished the insurer.  The majority con­cedes that information "appears to track what the insur­ance policy requires be included in an insured's signed and sworn proof of loss."  Slip op. at 5.  However, the majority rejects that informa­tion because it was not con­tained in a signed and sworn statement.  Slip op. at 5.  The legiti­mate purposes served by a proof of loss have been satis­fied in this case.  There is no question but that the insured fur­nished the insurer with all the informa­tion it wanted.  The majority's decision here serves only to relieve the insurer of an obliga­tion for which it con­tracted to be responsi­ble and for which it received a premium.       The majority cites no authority for its statement that the period during which the insurer reconsid­ered the claim should not count as a part of the tolling period, that "while defendant did agree to look into the claim again, the evidence indicates it did so as a courtesy to plaintiff and never withdrew its original denial."  Slip op. at 7.  The majority's analy­sis is contrary to section 143.1, which provides that the period of time during which the insurer is inves­tigating the claim should be charged to the insurer and deducted from the period of limitations.  There is a waiver of the period of limita­tions where the insur­er, after it has denied liability, does some­thing to indi­cate that it would reconsider its decision.  
Florsheim v. Travel­ers Indemnity Co.
, 75 Ill. App. 3d 298, 304, 393 N.E.2d 1223, 1229 (1979); 
Hermanson v. Country Mutual Insurance Co.
, 267 Ill. App. 3d 1031, 1035, 642 N.E.2d 857, 860 (1994).  As the majority concedes, slip op. at 3, Purtell informed the agent that the insurer might re­con­sider the denial of plaintiff's claim, and the insurer in fact assigned a new adjuster who did conduct an investigation.  I reject the majority's suggestion, slip op. at 7, that the solu­tion to this problem is that an insured should never believe an insurer when the insurer says that it will reconsider a claim.  

The insurer accordingly is responsible for the entire period of time from the date of loss until the claim was finally denied on November 14, 1994, except for (1) the two or three days between the date of loss and the date the claim was reported and infor­ma­tion furnished the insurer, and (2) the two or three days after the claim was initially denied before the agent contacted Purtell.  Because the claim was finally denied on November 14, 1994, and suit was filed November 6, 1995, the suit was timely filed unless the time charged to the insured totaled more than eight days.  The burden of proof, with either a section 2-615 motion or a section 2-619 motion, is on the movant, the insurer, and the movant has not sustained that burden here.